**REVERSE and REMAND; and Opinion Filed August 11, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00919-CR

### THE STATE OF TEXAS, Appellant
### V.
### SARAH BETH KELLER, Appellee

**On Appeal from the County Court at Law No. 6
Collin County, Texas
Trial Court Cause No. 006-88201-2013**

## MEMORANDUM OPINION
Before Justices Fillmore, Stoddart, and Schenck
Opinion by Justice Schenck

In this case, we are asked to decide whether the warrantless drawing of blood from an unconscious individual arrested for driving while intoxicated (DWI) violates the Fourth Amendment. This question comes to us in the form of an interlocutory appeal filed by the State challenging the trial court's order granting a motion to suppress in favor of appellee Sarah Beth Keller ("Keller"), who was arrested for DWI and subjected to warrantless blood-specimen collection while in a medically-induced coma. On appeal, the State challenges the trial court's conclusion that the warrantless blood draw was an illegal search in violation of the Fourth Amendment to the United States Constitution. We conclude that under the totality of the circumstances the warrantless blood draw of Keller was reasonable and did not violate the Fourth Amendment. Accordingly, we reverse the trial court's order suppressing the blood-test results

and remand the case to the trial court for further proceedings consistent with this opinion. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

### I.    Facts

On January 12, 2013, at approximately 3:00 p.m., Keller was involved in a collision with another vehicle at a busy intersection in Frisco. Prior to the collision, a motorist traveling behind Keller called 911 to report that she was driving erratically. That same motorist recorded her erratic driving and the collision on his cell phone.

The Frisco police department dispatched Officer Jason Hinkel to investigate the accident. When he arrived at the scene, paramedics were already attending to Keller and the occupants of the other vehicle. Thereafter, EMS transported Keller and the occupants of the other vehicle to various medical facilities for evaluation and treatment.

Officer Hinkel identified and interviewed witnesses, viewed the cell phone recording of Keller's extremely erratic driving and the collision, and generally processed the accident scene. After concluding his investigation at the scene, Officer Hinkel drove to Medical Center of Plano, where Keller had been transported, and obtained a blood draw from Keller without a warrant. She was in a medically-induced coma at the time because she was physically combative upon arrival at the center. Before taking the blood sample, Officer Hinkel read Keller the DIC-24 form advising her that she was under arrest and asking for a blood sample. Because she was unconscious, Keller did not respond. Keller's blood sample tested positive for hydrocodone and negative for alcohol. Keller was subsequently charged with DWI.

### II.    Motion to Suppress

Prior to trial, Keller moved to suppress the results of her blood sample testing claiming the warrantless blood draw was an illegal search in violation of the Fourth Amendment. In

response, the State argued the warrantless blood draw was authorized by both implied consent, pursuant to the provisions of the transportation code, and exigent circumstances.

At the suppression hearing, the State called Officer Hinkel to testify. Officer Hinkel testified about the investigation and the manpower required to secure the scene, redirect traffic, and protect the public. He explained that circumstances required at least four police officers to block the intersection to all vehicle traffic and additional officers to redirect traffic and deal with citizen inquiries. Due to the severity of the accident, and the fact that three people were transported to medical facilities in unknown conditions, Officer Hinkel processed the scene as if a fatality had occurred. He explained this required gathering and photographing evidence, identifying and interviewing witnesses, and painting the positions of the vehicles. This part of the investigation took over an hour and a half to complete.

Officer Hinkel also testified that his primary duties with the Frisco police department are traffic enforcement and injury accident investigation, not DWI investigation. He was dispatched to the scene, rather than someone from the patrol division, which normally responds to reports of suspected DWIs, because there was a shortage of patrol officers and they were close to a shift change.

Officer Hinkel admitted he did not attempt to obtain a blood-draw warrant, he had no experience obtaining a warrant, and he was not familiar with the judges in the area that sign search warrants. Officer Hinkel testified that had he wanted to obtain a blood-draw warrant, he would have had to request the assistance of another officer, and admitted he probably could have done so, but it would have taken some further time due to the department being short staffed.

Officer Hinkel further testified that his investigation led him to believe Keller was intoxicated at the time of the accident, but he did not know whether it was due to consumption of alcohol or use of illegal or prescription drugs. Officer Hinkel found no evidence of alcohol use

–3–

at the location of the accident such as open containers, broken drink glass, or alcohol in Keller's car. He believed he was authorized to proceed with the warrantless blood draw under the Texas Transportation Code's implied and withdrawal-of-consent statutes. TEX. TRANSP. CODE ANN. §§ 724.001–.019 (West 2011).

In addition to the consent statute, the State argued the search was conducted under exigent circumstances, including (1) the length of time required to process the scene as the site of a potential fatality; (2) the police department being short staffed; (3) Officer Hinkel's lack of familiarity with the warrant process; and (4) the dissipation of alcohol or drugs.

At the conclusion of the hearing, the trial court granted Keller's motion to suppress. In its comprehensive findings-of-fact and conclusions-of-law, the trial court concluded there were no exigent circumstances and that obtaining Keller's blood sample while she was in a medically-induced coma, incapable of providing consent, or pursuant to a valid search warrant, violated her Fourth Amendment right to be free of an unreasonable search and seizure. This interlocutory appeal followed.

## STANDARD OF REVIEW

This Court reviews a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State,* 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). A trial court's determination of historical facts is afforded almost total deference when those facts are supported by the record, but all purely legal questions and all application-of-law-to-established-facts questions are reviewed *de novo*. *State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011). The issue in the instant case falls into this latter category, and thus this Court's review is *de novo*. *See Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004) (stating that a question of whether a specific search or seizure is "reasonable" under the Fourth Amendment is subject to *de novo* review).

DISCUSSION

## I.   *The Fourth Amendment Warrant Requirement*

Keller challenged her blood draw on Fourth Amendment grounds.   The Fourth Amendment provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.   The taking of a blood sample by the government is a search that triggers the protections of the Fourth Amendment.  *See Schmerber v. California*, 384 U.S. 757, 770 (1966).   The touchstone of the Fourth Amendment is *reasonableness*.  *Riley v. California*, 134 S.Ct. 2473, 2482 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)) (emphasis added).   The Supreme Court has held that, "'[w]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant.'"  *Riley*, 134 S.Ct. at 2482 (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995)); *see also Birchfield v. North Dakota*, 136 S.Ct. 2160, 2173 (2016).

"To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct."  *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  "A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant."  *Id.*   Once a defendant establishes the absence of a warrant, the burden shifts to the State to prove the warrantless search was reasonable under the totality of the circumstances.  *Amador*, 221 S.W.3d at 672–73.   The State satisfies this burden if it proves an exception to the warrant requirement.  *See Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007).   The established warrant-requirement

exceptions are permitted because each is potentially reasonable. *Missouri v. McNeely*, 133 S.Ct. 1552, 1559 (2013) (citing *Michigan v. Tyler*, 436 U.S. 499 (1978)). Among those exceptions are "voluntary consent to search" and "search under exigent circumstances." *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003).

At the suppression hearing, the State stipulated that the blood draw was obtained without a search warrant. Therefore, the burden shifted from Keller to the State to prove the existence of an exception to the warrant requirement.

## II. *Exceptions to the Warrant Requirement*

*The State* relied upon the implied-consent and withdrawal-of-consent provisions set forth in the Texas Transportation Code and exigent circumstances to validate the warrantless search. TEX. TRANSP. CODE ANN. §§ 724.011, 724.014 (West 2011). On appeal, the State argues the trial court erred in concluding (1) there were no exigent circumstances, and (2) the implied-consent and withdrawal-of-consent statutes do not dispense with the necessity of obtaining a warrant. In response, Keller argues no exigent circumstances existed to justify the warrantless search and the United States Supreme Court's and the Texas Court of Criminal Appeal's decisions in *Missouri v. McNeely* and *State v. Villarreal*, respectively, establish the implied consent provisions of the transportation code do not authorize warrantless blood draws. *McNeely*, 133 S.Ct. 1552; *State v. Villarreal*, 475 S.W.3d 784 (Tex. Crim. App. 2015). For the reasons set forth in this opinion, we conclude exigent circumstances existed in this case. Consequently, we pretermit determining whether the implied-consent and withdrawal-of-consent statutes allow law enforcement to obtain a blood sample without a warrant.

The exigency exception to the warrant requirement operates "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *McNeely*, 133 S.Ct. at 1558 (quoting

*Kentucky v. King*, 563 U.S. 452 (2011)). Exigency potentially provides for a reasonable, yet warrantless search "because 'there is compelling need for official action and no time to secure a warrant.'" *Id.* at 1559 (quoting *Michigan v. Tyler*, 436 U.S. 499, 509 (1978)). Whether law enforcement faced an emergency that justifies acting without a warrant calls for a case-by-case determination based on the totality of circumstances. *Id.* at 1559. An exigent circumstances analysis requires an *objective evaluation* of the facts reasonably available to the officer at the time of the search, *not a hindsight review* of what law enforcement ideally should have done in a particular case after all the facts are known. *Cole v. State*, No. PD–0077–15, 2016 WL 3018203, at *4–5 (Tex. Crim. App. May 25, 2016) (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006)) (emphasis added). The Supreme Court's and the Texas Court of Criminal Appeals' decision in *Schmerber* and *Cole*, respectively, are instructive in this case. *Schmerber*, 384 U.S. 757; *Cole*, 2016 WL 3018203.

In *Schmerber*, the United States Supreme Court held that, based on the totality of the circumstances surrounding the search, a warrantless seizure of a driver's blood was reasonable. *Schmerber*, 384 U.S. at 770–72. In that case, Schmerber and his companion were injured and taken to a hospital after Schmerber's car skidded, crossed the road, and struck a tree. *Id.* at 758, n.2. The circumstances surrounding the blood draw in *Schmerber* that rendered the warrantless search reasonable were: (1) the officer had probable cause that Schmerber operated a vehicle while intoxicated; (2) alcohol in the body naturally dissipates after drinking stops; (3) the lack of time to procure a warrant because of the time taken to transport Schmerber to a hospital and investigate the accident scene; (4) the highly effective means of determining whether an individual is intoxicated; (5) venipuncture is a common procedure and usually "involves virtually no risk, trauma, or pain"; and (6) the test was performed in a reasonable manner. *Id.* at 768–72.

The Supreme Court granted certiorari in *McNeely* to resolve a split of authority occurring

in *Schmerber's* wake as to whether the body's natural metabolization of alcohol in the bloodstream creates a "per se exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." *McNeely*, 133 S.Ct. 1556. The court answered the question in the negative and reaffirmed that a proper exigency analysis considers the totality of the circumstances—the approach it adopted in *Schmerber*. *Id.* at 1559–60, 1563.

In *Cole,* the Texas Court of Criminal Appeals conducted an exigency analysis and considered the totality of circumstances to determine whether a warrantless blood draw was justified. *See Cole*, 2016 WL 3018203. In that case, Cole ran a red light at a high rate of speed striking another vehicle causing an explosion from which the other driver died instantly. *Id.* at *1. Cole was transported to an area hospital. *Id.* While Cole was at the hospital, a police officer directed medical personnel to take a sample of Cole's blood over his objection and without a warrant. *Id.* at *2. Subsequent testing revealed Cole's blood contained intoxicating levels of amphetamine and methamphetamine. *Id.*

In considering the totality of the circumstances, the court of criminal appeals recognized it took the lead investigating officer three and a half hours to investigate the crash scene and required the presence of numerous officers to secure the accident scene, direct traffic and keep the public safe. *Id.* at *5. And while the court noted that the availability of other officers was also a relevant consideration in an exigency analysis, it disagreed with the court of appeals' conclusion that ". . . an exigency finding cannot be made without the record establishing-and by extension, the State proving-that there was no other officer available to get a warrant in the lead investigator's stead." *Id.* The court explained that requiring such a showing "...improperly injects courts into local law enforcement personnel management decisions and public policing

strategy" and that it "further reduces the exigency exception to an exceedingly and inappropriately small set of facts...." *See id.*

In addition, the court of criminal appeals recognized that the concern that both medical intervention performed at the hospital and the natural dissipation of methamphetamine in Cole's body would adversely affect the reliability of his blood sample. *Id.* at 6. The court noted that, in contrast to alcohol, which dissipates in a gradual and relatively predictable manner, the elimination rate of a substance such as methamphetamine, the intoxicant at issue, is not so predictable. *Id.* Under these circumstances, law enforcement faces the inevitable destruction of evidence without the ability to know—unlike alcohol's widely accepted elimination rate—how much evidence it was losing as time passed. *Id.* Taking the logistical and practical constraints posed by a severe accident involving a death and the attendant duties this accident required and the dissipation of methamphetamine in Cole's system into consideration, the court of criminal appeals concluded exigent circumstances justified the warrantless blood draw.

The totality of the circumstances in this case are at least as compelling as those presented in *Schmerber* and *Cole.* Like *Schmerber* and *Cole,* this was not a "routine" drunk driving stop. Keller was involved in a collision at the intersection of two busy highways that resulted in the transport of three individuals to medical facilities and a protracted investigation involving several officers. Officer Hinkel observed a contemporaneous cell phone video depicting Keller's driving in the minutes before the accident that strongly suggested the involvement of drugs or alcohol. Both the time required to complete the accident investigation and the lack of available law enforcement personnel hindered pursuing the warrant process. Moreover, Officer Hinkel, as a traffic enforcement and injury accident investigator, had no experience obtaining search warrants and did not know how to secure one. As the court of criminal appeals stated in *Cole*, the fact that another officer might have been able to secure a warrant does not establish the lack of an

exigency, but is a relevant consideration in an exigency analysis. *Id.* at \*5. The record in this case does not establish that there was a readily available officer who could have gotten a warrant while Officer Hinkel continued his investigation. Thus, we conclude the potential availability of other officers does not create a lack of exigency in this case.

In addition to the logistical obstacles of securing a warrant and Officer Hinkel's lack of experience in obtaining warrants, Officer Hinkel indicated he was concerned about the lapse in time between the accident and his arrival at the hospital. While Officer Hinkel was familiar with the metabolism of alcohol in the blood stream, he was not familiar with the dissipation rates of illegal and prescription drugs, which he thought could be the source of Keller's intoxication. The lack of a known elimination rate of a substance law enforcement believes a suspect ingested or used does not necessarily mean that the body's natural metabolism of intoxicating substances is irrelevant to or cuts against the State's exigency argument. *Id.* at \*6. In fact, as in *Cole,* it serves to distinguish this case from *McNeely*.

The *McNeely* court relied in significant part on the widely known fact that alcohol "naturally dissipates over time in a gradual and relatively predictable manner." *McNeely*, 133 S.Ct. at 1561. The lack of a known elimination rate is at odds with the undercurrent running through the *McNeely* opinion: While time is of the essence, a minimally delayed test when dealing with an alcohol-related offense does not drain the test of reliability because experts can work backwards to calculate blood-alcohol content at an earlier time. *Id.* at 1560–61, 1563. In this case, alcohol did not appear to be the intoxicant at issue and without knowing what intoxicant was involved or its elimination rate, law enforcement faced inevitable evidence destruction without the ability to know—unlike alcohol's widely accepted elimination rate—how much evidence it was losing as time passed. *Cole*, 2016 WL 3018203, at \*6. This concern was further compounded by the fact that medication administered at the hospital could affect any

–10–

subsequent blood sample.

Evaluating the totality of the circumstances here, we conclude the warrantless blood draw was constitutionally permissible under exigency principles.  This case is not like *McNeely*, where the *sole* basis for an exigency claim was the natural dissipation of alcohol that occurs in every drunk-driving case.  Like the officers in *Schmerber* and *Cole*, law enforcement was confronted with not only the natural destruction of evidence through natural dissipation of intoxicating substances, but also with the logistical and practical constraints posed by a potentially fatal accident and the necessity of securing the site and protecting the public.  We therefore conclude that the warrantless blood draw did not violate the Fourth Amendment and the trial court erred in concluding a violation occurred.

Accordingly, we sustain the State's sole issue.

## CONCLUSION

We reverse the trial court's order granting the motion to suppress and remand the case to the trial court for further proceedings consistent with this opinion.  TEX. R. APP. P. 43.3(a).

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47

150919F.U05

–11–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-15-00919-CR        V.

SARAH BETH KELLER, Appellee

On Appeal from the County Court at Law
No. 6, Collin County, Texas
Trial Court Cause No. 006-88201-2013.
Opinion delivered by Justice Schenck.
Justices Fillmore and Stoddart participating.


Based on the Court's opinion of this date, the trial court's order granting Sarah Beth Keller's Motion to Suppress is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.


Judgment entered this 11th day of August, 2016.